MARGARET PATTERSON

*v.*

J. D. LOISEAUX LUMBER COMPANY et al.

[Decided April 25th, 1921.]

1. In contract for sale of lands, where time is not made of the essence of the contract, vendee is entitled to decree for conveyance, notwithstanding her default in performance on the date fixed for consummation, provided vendee tenders performance within a reasonable time thereafter. Under the circumstances of this case—*Held*, that two months was within a reasonable time.

2. Where vendee under a contract for sale of lands was unable to perform on the date fixed, but was ready and willing and offered to perform within a reasonable time thereafter, being met by refusal and statement from vendor that the premises had been sold to a third party, vendee is entitled to decree for conveyance, notwithstanding she made no actual legal tender of performance.

3. Where vendee, under contract for sale of lands, wherein time is not of the essence, is unable to perform on the date fixed, vendor cannot cut off vendee's right to the lands until after the expiration of a reasonable time, and then only by tendering deed and demanding performance, or tendering back the part payment and notifying vendee of rescission.

4. Neither waiver or estoppel is proven as against vendee where the acts which might otherwise constitute proof of such waiver or estoppel, are, presumably, the result of a belief in the truth of a false representation by vendor.

5. Where vendee under contract of sale of land is in actual occupancy of the premises, a subsequent purchaser from vendor is not a purchaser without notice of vendee's rights or claim of rights.

6. Where a contract of sale of lands provides for a bond and purchase-money mortgage as part of the consideration, without specifying the period of maturity or rate of interest, or that payment shall be postponed, it will be deemed payable immediately and with legal interest.

.7. Where a contract of sale of lands provides for the execution and delivery by vendee of purchase-money mortgage securing payment of bond as part of the consideration, though vendee be a married woman, yet the contract being for the benefit of her separate estate may be enforced in equity against her; hence, the objection of lack of mutuality is no bar to a decree of specific performance against vendor.

8. In suit for specific performance, where conveyance has been made by vendor to a subsequent purchaser and consideration received in whole or in part, if specific performance be decreed, the decree should provide for the adjustment of all the equities among the several parties.

On final hearing.

*Mr. Robert Newton Crane,* for the complainant.

*Mr. William Newcorn,* for the defendants.

BUCHANAN, V. C.

Complainant's suit is as vendee for specific enforcement of a contract of sale of a house and lot known as No. 228 Emerson street, situate in Plainfield, New Jersey. In addition to the vendor, J. D. Loiseaux Company, there are two other defendants —Joseph Nathanson, to whom vendor made a subsequent contract to sell the premises in question, and Plainfield Realty Wall Paper Supply Company, a corporation in which Nathanson was interested, and to which, in consummation of the second contract of sale, conveyance of the property was made before bill filed.

The terms of the contract sued on are evidenced by a letter of February 4th, 1920, from vendor to vendee, which reads as follows:

"PLAINFIELD, N. J., Feb. 4, 1920.

*Mrs. David Patterson,*
      *228 Emerson Ave.,*
            *Plainfield, N. J.*

DEAR MADAM:

We acknowledge having received $130 from you on February 3d, to apply as follows: being the rent on the house for the month of February, and $100 being a payment on account of the principal of $3800 for the house and lot known as No. 228 Emerson Ave.

Our understanding is this—that you will pay $30 each month until we are able to give you a free and clear title, the result of the foreclosure which we are now proceeding with. So soon as we are able to do this, you agree to pay us $3700 in the manner following: $3000 by raising this amount by mortgage on the above mentioned property, and $700 in cash, which we understand you are to raise by second mortgage, and the above when carried out is satisfactory to us, but if for any reason you are unable to carry out the above provisions, you agree, upon being requested, to vacate the property, leaving it in first class condition, and all that you have paid in to be counted as liquidation of any damages we might sustain.

If any of the above you do not fully concur, please advise at once, so that there can be no misunderstanding.

Very respectfully yours,

J. D. LOISEAUX LUMBER Co.,

(Signed)        J. D. Loiseaux,

JDL/DC        By Treasurer."

By the terms of this contract, the date of consummation— that is to say, the date when the vendor should convey and when the vendee should pay—was to be as soon as vendor obtained and could convey a free and clear title, as the result of a foreclosure suit then being carried on by vendor. That date in itself was indefinite and uncertain. Being within the control of the vendor, it was obligated to proceed in its foreclosure suit with reasonable diligence and dispatch. In other words, the time for performance by *both* parties was fixed as a reasonable time after the contract. Time was, obviously, not of the essence as to this. The vendee had been put in possession (she desiring the place as a home), and vendor was receiving, and was to continue to receive, adequate and satisfactory rent at a rate fixed by itself, during whatever time should elapse before the clearing up of the title. Apparently, vendor had title, but there was an encumbrance thereon to be cleared away by the foreclosure. (See *Exhibit D-2*.) The exchange of deed and purchase price was postponed, upon terms equitable to both parties, until that should have taken place.

It may be noted here that it appears by the entire correspondence that the negotiations were begun November 13th, 1919, and, indeed, the arangement for the sale and purchase agreed to about December, 1919. The vendee inquired the price of the house and accepted the price fixed, without haggling. The vendor,

prior to fixing the price at $3,800, said (*Exhibit D-2*) it had been "practically" offered $3,800 for the house, and thought it should get $4,000. Obviously, therefore, the price of $3,800 was a fair price, and the element of friendship, which, undoubtedly, existed in the case, did not—as, indeed, it could not properly in a corporation's affairs—figure in a financial way to any appreciable extent. It further appears from the correspondence that the first idea of the vendor was that the vendee should pay down the $800, take possession, and pay the $3,000 balance (to be raised on mortgage loan) after the clearing up of title. The vendee's letters show that she apparently was, or could have been, ready to pay the $800 about January 1st, 1920. The arrangement was later changed to a down payment of $100 on taking possession and the payment of $30 a month rent while waiting for the freeing of title. Why this change was made does not appear, but it certainly was more beneficial to vendor than the earlier plan, although perfectly equitable to the vendee.

The precise time that the vendor acquired its cleared title, and thereby fixed the time for performance, is a little uncertain. It could not have been until after May 24th (the date of the deed to vendor). From the testimony of Mr. J. D. Loiseaux and of complainant, and the letter *D-13,* I fix June 1st as the approximate date when notice was given to or acquired by complainant that the vendor was now able to convey. There had thus been a lapse of about six months from the time of the original oral agreement and of four months from the letter which was the written evidence of the modified agreement (prior to the writing of which the foreclosure had been commenced). Reference to the record and proceedings of that foreclosure suit on file in this court shows that the bill was filed December 26th, 1919, and that no unusual speed was exercised by vendor's agent, the solicitor for complainant therein. For instance, there was a lapse of six weeks between the decree *pro confesso* and the filing of the master's report.

June 1st, then, became, and was, the date for the consummation of the sale by conveyance and payment. But here, again, time was not made the essence of the contract by provision in the contract, nor by force of the circumstances. Hence, even if the

date had been fixed and certain in advance, and the vendor had attended and made tender of deed, the vendee, in equity, if payment were made or tendered within a reasonable time thereafter, would have been entitled to conveyance. *Saldutti* v. *Flynn, 72 N. J. Eq. 157.* But the vendor did not make such tender, nor attempt to hold the vendee to a strict performance as to time. The correspondence and dealings which ensued between the parties are further evidence (though none is necessary) that time was not of the essence in the transaction. True it is that the vendor repeatedly sought to speed performance by the vendee, but the actuating reasons therefor appear from the evidence to have been simply the desire of businessmen to complete an unfinished transaction, and the desire, or, at least, the hope, of getting rid of the Patterson contract so as to enable greater profit to be realized from a sale to other parties who were willing to pay more money.

The latter motive is, of course, one which in nowise appeals to a court of equity. In equity the vendor is considered a trustee of the property for the vendee from the time of the making of the contract. *Saldutti* v. *Flynn, supra; King* v. *Ruckman, 21 N. J. Eq. 599; Haughwout* v. *Murphy, 22 N. J. Eq. 531.*

From the evidence I find the fact to be (as explained more in detail hereafter) that the vendee was ready to perform on July 30th. I further find that this delay of two months was not an unreasonable delay under all the circumstances. Admittedly, all but the last two or three days of this delay was acquiesced in or waived by the vendor. This time was being spent by the vendee in actual endeavors to raise the $700 balance to pay the vendor (which, in the meantime, as Mr. Loiseaux testifies, had agreed to take the $3,000 first mortgage itself, as part of the purchase price), having been disappointed in the arrangements which she had originally made in that behalf.

The facts in the case at bar are, in the majority of particulars, remarkably similar to those in the case of *Cranwell* v. *Clinton Realty Co., 67 N. J. Eq. 540*—so much so that the opinion of Vice-Chancellor Garrison in the latter case might serve almost equally well for the present issues. Here, as there, there was no unreasonable delay; no effort by vendee to obtain undue advan-

tage or to speculate upon the property; no disposition by vendee to abandon the contract, but, on the contrary, continuous effort to perform; vendee having gone into possession of the property and expended some money and labor thereon; no tender at any time of deed by vendor; no return or tender by vendor of the part payment of purchase price which had been made by vendee. This case is a little stronger in vendee's favor than the *Cranwell Case,* because here vendee was keeping vendor free from any loss by payment of adequate rent during the interim, and because here the vendor was, to a certain extent, endeavoring, for its own advantage, to get rid of the contract. As to the $100 part payment, it does appear that vendor in its letter of July 27th spoke of returning this, on certain conditions, but no tender was ever made. Its right, under the original contract, to this $100, or any part thereof, was only as to damages vendor should sustain by a breach. Here, if the contract were breached by vendee, it would sustain no damage, for it contemplated sale to the subsequent purchaser for a much higher price; and if it desired a rescission instead of a claim of breach, it was, of course, incumbent upon it to return the purchase-money.

Here, also, as in the *Cranwell Case,* there was an attempt by vendor to rescind or terminate the contract, and a question arises as to the effect of that which was done in that behalf. On July 27th, vendor, through Mr. J. D. Loiseaux, wrote to vendee as follows:

"PLAINFIELD, N. J., July 27, 1920.

*Mrs. Margaret Patterson,*
   *228 Emerson Ave.,*
     *Plainfield, N. J.*

DEAR MADAM:

According to the writer's call on you last Friday evening, you will remember you agreed that Tuesday morning, the 27th, you would call at our office to make payment of the balance of the $800.00 or at that time the property would be given up by you.

No doubt your party has disappointed you, for which we are indeed sorry, as we expected you were going to take this property over and make it a home, but as we have been waiting for you for many months, we are sure you cannot find fault with us, as the previous correspondence shows how the matter stands. Although we told you formerly that if you did not pay the balance, the $100.00 you paid would be forfeited, yet we do not want to take advantage of this, and if you can give possession on the first of August, we will return you the $100.00 you have deposited, less,

however, the unpaid rent, but if you cannot give possession the first of August, it will be satisfactory for you to live there until the first of September, at which time we can make the adjustment on your deposit.

Very respectfully yours,

J. D. LOISEAUX LUMBER COMPANY.

Treasurer.

JDL/H          J. D. Loiseaux."

It will be noted that the first paragraph of this letter speaks of an agreement between vendor and vendee that the latter would pay the $700 on the morning of the 27th, or that at that time the property would be "given up" by vendee. There is no other evidence in the case of any such agreement—Mr. Loiseaux did not testify as to any such agreement. This letter, in itself, is, of course, no evidence in that behalf, but the fact that Mrs. Patterson in her reply made no denial or contradiction of the statement in Mr. Loiseaux's letter might be evidence from which the making of such an agreement could be found as a fact. However, I find myself unable to give any such effect to this letter and Mrs. Patterson's reply of July 29th, which reads as follows:

"228 Emerson Ave.

Plainfield, N. J.

July 29th, 1920.

DEAR MR. LOISEAUX:

Your note I received yesterday afternoon, which was characterized as all your treatment towards us has been, namely, with great fairness.

Mr. Loiseaux that has been mainly why I have wanted this house so much to make a home [using your own phrase].

Mr. Chas. Schwab has not paid Mr. Tebbs as yet [he is having a big summer home built for himself and is very busy]. However, Mr. Patterson called on Mr. Feickert of the State Trust Co. and he will advance the amount for us, by Mr. Tebbs signing for it to be paid at a stated time, which Mr. Tebbs is willing to do for us.

I know this has all been a great source of annoyance to you, Mr. Loiseaux, and I am just miserable over it all, but the before stated reason has made me anxious to carry on.

Mr. Patterson will call into the office Mr. Loiseaux on or around Saturday, kindly grant us just that much longer.

Gratefully yours,

MARGT. PATTERSON."

"P. S.   Enclosed you will find $30.00 rent for July."

In the first place, the finding of such a fact, as already noted, can only be reached by an inference from Mrs. Patterson's failure

to contradict. Such an inference is not by any means a necessary or conclusive inference—and in the present case it is rebutted. For one thing it is perfectly obvious from Mrs. Patterson's reply that she did not consider the contract terminated—she was "carrying on" and expected to get the money by Saturday (the 31st). The relationship of practically employer and employe which had existed between Mr. or Mrs. Loiseaux and Mrs. Patterson, and the other circumstances, would naturally lead her to couch her reply as she did, rather than to make a contradiction. It is very significant in this behalf that she did not contradict his statement that "we have been waiting for you for many months"—a statement that was clearly untrue, for they had been waiting for Mrs. Patterson only a scant two months at most. It may further be noted that Mr. Loiseaux in his testimony says that he, "during May to July," told vendee that vendor had contracted to sell to an Elizabeth party for more money—statements which were obviously not true, since the other contract was not made till August 10th.

Again, even if it should be assumed that the agreement mentioned in Mr. Loiseaux's letter had been made, the agreement by Mrs. Patterson, as stated, was, "I will pay the balance of the $800 on Tuesday morning, the 27th, or I will, *at that time,* give up the property." It does not appear that there was any consideration for the promise—and, certainly, she did not "give up the property." If it be regarded as a notice from vendor to vendee, then the answer is, as pointed out in *Cranwell* v. *Clinton Realty Co.* (at *p. 549*) (citing *Hubbell* v. *Von Schoenig, 49 N. Y. 327,* and the opinion in the court of errors and appeals in *McTague* v. *Sea Isle, &c., Association, 57 N. J. Law 428*), that neither rescission nor termination was accomplished because there was neither return of the part payment nor tender of the deed.

It will further be noticed from a careful reading of vendor's letter of the 27th that it by no means constitutes a statement or notice that vendor considers the contract terminated or rescinded —much less, that it is going to act upon that assumption. There is nothing in the letter which concludes anything—the letter still leaves it open, for anything to the contrary therein, for the

vendee still to pay at once and get the deed. There had been prior "ultimatums" (see the letters of June 22d and of July 9th) which had not been enforced, nor attempted so to be. And Mr. Loiseaux, in his testimony, says, speaking of July 30th, that if the $700 had been offered "at any time" the company would have accepted it. In Mr. Loiseaux's letter of July 29th, he refers to Mrs. Patterson's promises "to be in on the 25th," but makes no claim that she had agreed to rescind or terminate.

Still, further, and of perhaps even greater significance, not only was no claim made by Mr. Loiseaux in his testimony that a rescission or termination had been made by agreement, nor any such claim made in the vendor's pleadings, or by its counsel in oral argument or brief (the point was not adverted to by either counsel), but, on the contrary, the vendor, in its answer, specifically says that it made repeated demands on the vendee for her to fulfill the contract, from May 24th, 1920, to *August 10th, 1920.*

From all of these considerations, therefore, it is clear to me that there was in fact no agreement to terminate or rescind, and that there was no termination nor rescission prior to July 30th.

The letter from vendor to vendee of July 29th, mailed late that night and not received until the afternoon of the 30th, seems of no great materiality, since it was not received until after the conversation between Mr. Patterson and Mr. Loiseaux on the morning of July 30th. On that morning, Mr. Patterson testifies, he went to Mr. Loiseaux at the company's office with the $700 (which was in the form of a treasurer's check of the State Trust Company to Mr. Patterson's order), in order to make the payment for the house; that he told Mr. Loiseaux he had come with the money to fix up on the house and "for my deeds right away;" that Loiseaux said, "Patterson, I am sorry, the house is sold to another party in Elizabeth for more cash; can you move out before the first of September?" that he replied, "I have nothing to do with the people in Elizabeth—I have the money to pay you for the house;" but Loiseaux did not give the deed nor take the $700.

Mr. Patterson made a favorable impression as a witness; his credibility was not attacked, nor is it impeached by anything in the case. He has an interest in the suit, it is true, but his testimony is corroborated by a disinterested witness, Mr. Smith, who, on July 29th, obtained Mr. Tebbs' signature to the note (from the discount of which the $700 was obtained), and who was with Patterson at the bank early in the morning of the 30th, saw him get the check, and immediately drove him to the Loiseaux office, and saw him talking to Loiseaux, although he did not hear the conversation. The check and the note were produced in evidence. Mr. Loiseaux admits that he was at the Loiseaux company's place that day—he cannot deny that he saw Patterson there that morning, or that he told Patterson that the house had been sold to another party for more cash. He does deny—and this is the extent of his denial—that if he saw Patterson at that time, Patterson offered to pay the $700. He says if Patterson had made such an offer "I would have accepted it in a minute."

From all this evidence it is impossible to conclude otherwise than that Patterson did go there on that morning with the $700 check to pay to vendor and talked with Loiseaux. I also find in fact that Loiseaux told him at that time that the house had been sold to the Elizabeth party for more money and refused to perform the Patterson contract. Mr. Loiseaux's failure to deny this, coupled with his letter to Mrs. Patterson of July 29th, make this practically certain, to my mind. As to just what Mr. Patterson did by way of tender is less clear. There is no testimony that Patterson physically tendered the check, or that he even showed it to Loiseaux. Patterson says he told Loiseaux "I have come with the money to fix up on the house," and "I have the money to pay you for the house." It may well be that Patterson did not make clear to Loiseaux that he then and there had the money with him; it may be that Loiseaux did not understand Patterson's statement that he had the money, or that Loiseaux did not give Patterson a chance to make it clear. I am satisfied, as I said, that Patterson had the money and intended then and there to make the payment. Having gotten the money as he did, and gone with it to Loiseaux for the purpose of paying, it is incredible but that one of two things necessarily happened—

either he offered it to Loiseaux, or if he did not, such failure was occasioned by Loiseaux's refusal and statement that the house was sold to the other party. Whichever of these be the fact, it seems to me makes no particular difference. Loiseaux's refusal was not the result of any misrepresentation or misstatement by the Patterson's, but it was a definite refusal by vendor to perform, and it was an actual misstatement of fact by Loiseaux to Patterson, inasmuch as the sale to the other party was not made until August 10th.

The next question that arises is as to the effect of the letter of July 31st, from Mrs. Patterson to Mr. Loiseaux, which reads as follows:

"July 31st, 1920.

228 Emerson Ave.<br>Plainfield, N. J.<br>Saturday morning.

DEAR MR. LOISEAUX:

Mr. Patterson called into the office yesterday afternoon, but did not find you there.

Should your buyer wish to rent to us I feel that $35 a month should be plenty, in the event of his not renting, how could it have been possible for us to give possession on August 1st. even September is only a 30 day notice, and you will remember how fair I wished to be with Mrs. Henry, surely I deserve what I gave.

I am grateful to you, and thankful that you wish to return me the $100.00 deposit, it is quite an item to me, and of course of little account to you.

But I would add Mr. Loiseaux that we have done numerous little things around here and the property has not deteriorated any since we came into it. I am.

Respectfully,

MARGARET PATTERSON."

It is now contended by the vendor's counsel that complainants by their conduct, "after receiving notice of the rescission, have estopped themselves from equitable relief at the hands of this court." The first sentence of the letter refers to a call by Mr. Patterson at the Loiseaux office on the *afternoon* of the 30th. This, obviously, is not the call of the morning of the 30th. What the purpose of the afternoon call was does not appear; it may have been to make a further attempt to conclude the purchase, or it may have been to the same purport and effect as Mrs. Pat-

terson's letter of the 31st. The testimony is that on the return of Mr. Patterson from the morning's call on Mr. Loiseaux—he told his wife of the circumstances of that call—and of Loiseaux's refusal and statement that the property had actually been sold to another. This letter is obviously based on that information, accepting that statement as true. If that statement had been true, the letter might be deemed an acquiescence and waiver of vendee's rights. If there had been no misstatement of fact by the vendor, and the vendor had acted on the faith of that letter, interpreting it as an acquiescence and waiver, vendee might well be estopped. But the statement was not true, and the letter based upon a belief in the truth of that untrue statement by no means justifies the inference of a waiver and acquiescence if she had known the truth, and I do not see how it can be so construed. Neither can I see any justification for any argument of estoppel—not only because of the fact that the letter was predicated upon vendor's misrepresentation (and in this connection it would be no answer to say that vendee's rights were not legally cut off by a sale to a third party; if she knew that as matter of law she might, nevertheless, have preferred to waive her rights rather than to insist upon them, if there had actually been a sale to a third person) but also because there is no evidence whatever that the sale which was thereafter made to a third party was the result of the alleged waiver and acquiescence of vendee. On the contrary, it appears clearly from the evidence that the sale had been previously determined upon by vendor, and was not in anywise the result of Mrs. Patterson's letter. Mr. Loiseaux says the negotiations by his company for this other sale had been commenced while he was in Canada—the middle of June—only two or three weeks after the company had acquired title.

Neither can it be said that vendee's waiting to file her bill of complaint until August 26th amounts to waiver, acquiescence, estoppel or laches. The effect of vendor's misstatement of fact would continue in this behalf until vendee was informed or learned of its falsity. Vendor does not show when that occurred, nor does it appear from anything in the case, although it may be argued that it occurred at Nathanson's call about August 10th. There is no evidence whatever that vendor relied upon

vendee's failure to sue in concluding the contract and subsequently consummating the sale. And even if it had so relied, it could not avail itself thereby, for it could not equitably rely upon or take advantage of conduct resulting from its misrepresentations.

I conclude, therefore, that as between the vendor and vendee, vendee is entitled to a decree for specific performance. Now, as to the rights and liabilities of the other defendants—Nathanson and the Plainfield Realty Wall Paper Supply Company. For the purposes of this suit these two defendants may be deemed identical—Nathanson being the agent of the Plainfield company and negotiating the contract for its benefit.

Quoting from *Cranwell* v. *Clinton Realty Co.*, *supra* (at *p. 550*):

"The rule is well established that a purchaser with notice of a prior equity, superior to the rights of his grantor, takes the place of the grantor and is bound to do that which he was bound in equity to do. Such a purchaser can be compelled specifically to perform the agreement by conveying the land in the same manner and to the same extent as the grantor would have been compelled to do had he retained the legal title. *Young* v. *Young (Chancellor McGill, 1889), 45 N. J. Eq. (18 Stew.) 40, 41; Haughwout* v. *Murphy (Justice Depue, Court of Errors and Appeals, 1871), 22 N. J. Eq. (7 C. E. Gr.) 547; Brinton* v. *Scull (Vice-Chancellor Grey, 1897), 55 N. J. Eq. (10 Dick.) 747.*

"And to be a *bona fide* purchaser without notice, the defendant must not only have agreed to purchase without notice of the complainant's previous agreement, but he must also have actually paid the purchase-money and taken his deed without such notice. *Dean* v. *Anderson (Chancellor Bloomfield, about 1810), 34 N. J. Eq. (7 Stew.) 503; Brinton* v. *Scull, supra.*"

The subsequent purchasers by their answer deny that they had any knowledge of the Patterson contract. But at the time of the Nathanson contract, August 10th, and at the time of the deed, August 24th, and, indeed, at all times, the vendee was in actual possession and occupancy of the premises. It is well settled, therefore, that Nathanson and the Plainfield company are chargeable with notice of the legal or equitable interest which

the Pattersons claimed in the premises—with notice of every fact and circumstance which they might have learned by making inquiry of the persons in possession. *Losey* v. *Simpson, 11 N. J. Eq. 246* (at *p. 255*) ; *Wanner* v. *Sisson, 29 N. J. Eq. 141* (at *p. 150*) ; *Wood* v. *Price, 79 N. J. Eq. 620*.

The testimony shows that in the forepart of August, just prior to the execution of the second contract on August 10th, Nathanson came to the house with Kenyon, an employe of the Loiseaux company, told her that Nathanson was going to buy the house and wanted to see it; went through and looked at the downstairs part, and went out, and as they went out Nathanson said to her, "Your rent will be $45 a month," but did not stop for any reply from her. This is Mrs. Patterson's testimony. Nathanson testifies to some additional conversation with Mrs. Patterson, which might be contended to be sufficient inquiry as to her rights 'or claims, or an estoppel. But I am satisfied that this alleged conversation did not take place. Mrs. Patterson denies it; Kenyon, called as a witness by Nathanson, did not corroborate it; and Nathanson did not make a favorable impression on me as a witness—he was evasive and in several instances made replies to questions which proved on further pressing to be untrue.

Nathanson called later on with McIntyre. It is not clear whether this was after the deed had passed or not, but even assuming it to have been prior to the deed, I find that nothing occurred to raise an estoppel against Mrs. Patterson. She denies the conversation as related by Nathanson and McIntyre, and I believe her. Nathanson I have already commented upon. McIntyre was a close associate of Nathanson's, and both he and Nathanson say that on this occasion Mrs. Patterson said she could have bought the property but "couldn't raise the money." This is impossible for me to believe. It is absolutely certain from the evidence that she not only could, but did, raise the money. That being so, she certainly would not have made the alleged statement. The probability is that Nathanson believed she couldn't raise the money, and believed that she had no rights except as a monthly tenant—but that that information came from the Loiseaux people.

I cannot find any waiver by vendee. It is elemental that waiver means an intentional relinquishment of rights, and this necessarily involves a knowledge of the rights which it is alleged were intentionally abandoned. The Patterson testimony is that they did not know their rights until they consulted a lawyer, which was at the time the deed passed. There is no reason to doubt this—observation of them and consideration of all the evidence makes it certain. Furthermore, until the call of Nathanson, about August 10th, she had no knowledge of the fact that the Loiseaux company had not already sold to Nathanson or another. Vendor's refusal was on July 30th and the bill was filed August 26th.

Estoppel *in pais* is, of course, different from waiver, and might arise even in the absence of a knowledge of rights. But I do not see how any such arises here from Mrs. Patterson's failure to consult counsel or to bring suit, or to notify Nathanson of her claim, between August 10th and August 24th. It was incumbent upon Nathanson to inquire of her as to her rights or claim, and this he did not do. Furthermore, there has been no damage occasioned to Nathanson; he has made no improvements or alterations in the property; he can be restored completely to the *statu quo ante* by the returning to him from the Loiseaux company of his money with interest. Neither is the latter damaged —it has had the use of Nathanson's money. The only result of a specific enforcement of the Patterson contract is that the Loiseaux company and Nathanson are prevented from acquiring profits out of this house which in equity belongs to Mrs. Patterson, which equity I find she has not waived nor lost by estoppel.

I will, therefore, advise such decree.

The contract does not specify the term or interest rate of the $3,000 bond and mortgage to be given, nor that payment shall be postponed. It will, therefore, be payable on demand and with legal or six per cent. interest. *Green* v. *Richards, 23 N. J. Eq. 32, 536.*

Complainant is a married woman and a conveyance by her is not valid without her acknowledgment (*Chassman* v. *Wiese, 90 N. J. Eq. 108*), nor without her husband joining in the same. *Corby* v. *Drew, 55 N. J. Eq. 387.* In the present case the hus-

band is not a party to the suit, nor did he sign the contract, nor is there any contract acknowledged by the wife. *Cf. Goldstein* v. *Curtis, 63 N. J. Eq. 454.* Specific performance will not be decreed where, *at the time of the decree,* both parties are not bound—where complainant could not be compelled to perform the obligation on her part. *Richards* v. *Green, 23 N. J. Eq. 32; affirmed, Ibid. 536; Woodruff* v. *Woodruff, 44 N. J. Eq. 349; Ten Eyck* v. *Manning, 52 N. J. Eq. 47.* There is, of course, no difficulty on this score as far as payment of money by the vendee is concerned. *Moore* v. *Baker, 65 N. J. Eq. 104.* The evidence shows that she agreed to buy and pay the agreed price. There may be no written memorandum of this signed by her, but if that were necessary it was supplied by the filing of her bill, under the principles mentioned in the cases last cited. Is there any difficulty by reason of the fact that her obligation is not merely to pay money but is to pay part in money and execute a purchase-money bond and mortgage for the other part? I see no obstacle on that score. The contract is one for the benefit of the wife's separate estate, and, under such circumstance, if a bond and mortgage be given by a married woman, invalid because of non-joinder of the husband, or lack of acknowledgment by the wife, although the invalid mortgage creates no lien, yet the court will decree a lien from the circumstances, and a lien thereupon arises from and by the decree. *Insurance Co.* v. *Marshall, 32 N. J. Eq. 103; Armstrong* v. *Ross, 20 N. J. Eq. 109; Perrine* v. *Newell, 49 N. J. Eq. 57; Cf.,* also *Wilson* v. *Brown, 13 N. J. Eq. 277.* And where a married woman holds the property as trustee, equity will decree that she convey; the decree is self-executing and the questions of joinder by husband or acknowledgment by her raise no obstacles. *Fee* v. *Sharkey, 59 N. J. Eq. 284; affirmed, 60 N. J. Eq. 446; Goldstein* v. *Curtis, 63 N. J. Eq.* (at p. 461).

So, in the present case, the mortgage is to be security for the unpaid part of the purchase price; the vendor has a lien for that in any event—and a lien which is prior to any interest which the husband could take in the property. It might be said that under the agreement the complainant on receipt of the deed would immediately hold the property as trustee in favor of the vendor, to the extent of the mortgage promised, and a self-executing decree

that she execute and deliver such mortgage might be made against her; at any rate a decree establishing the vendor's lien could be made which would have the same effect.

I think that under the circumstances of the case it is only equitable that the vendee should pay the interim "rent" up to the time of performance specified in the decree (which may be ten days after the date of the decree). It does not appear clearly from the evidence whether those payments have been kept up or not, but, inferentially, they have not. If the parties cannot agree on the amount (if any) due in this respect, I will hear testimony on any motion day, on five days' notice.

The decree should provide for the complete adjustment of the matter among all the parties. *Cf. Saldutti v. Flynn, supra.* In addition to providing for the conveyance by the defendant realty company to complainant, and the payment of the purchase price, plus unpaid rent, by complainant, as above mentioned, it should also provide for the return by the Loiseaux company to the realty company of all moneys paid by the latter on account of purchase price, together with interest thereon at six per cent. from the dates of such payments; also such taxes as have been paid by the realty company with interest. The Loiseaux company is paid for these taxes out of the "rent" from complainant. Allowance is also to be made by the Loiseaux company to complainant on account of taxes for the current year. *Cf. P. L. 1918 p. 847 §514.* It would appear from the second agreement of sale (*D-29*) that there is a mortgage of $2,400 on the property held by outside parties. This, if still outstanding, must be satisfied and cancellation procured by the Loiseaux company, unless the parties are willing that complainant assume payment in lieu *pro tanto* of the $3,000 mortgage to be given by her under the contract.

The form of the decree can be settled on notice. Complainant is entitled to costs.