MARGARET PATTERSON, complainant,

*v.*

J. D. LOIZEAUX LUMBER COMPANY, a corporation, et al., defendants.

[Decided March 6th, 1922.]

1. Where the contract of sale of property to a married woman required her to give a mortgage for the purchase price, which she could not do without her husband joining, the wife does not show ability to perform where the husband did not join in the bill for specific performance, and profess his readiness to execute the mortgage.

2. In a suit for specific performance of a contract for sale of land to the complainant, evidence *held* to show that the complainant, while in default in making the payments called for by the contract, knew that the vendor was attempting to sell the property to others, and expressed no objection to the proposed sale, so that the contract was abandoned, and she was not entitled to specific performance, especially where specific performance would require the vendor to accept a vendor's lien instead of the mortgage called for in the contract.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Buchanan, whose opinion is reported in *92 N. J. Eq. 569*.

*Mr. Robert Newton Crane*, for the complainant.

*Mr. William Newcorn*, for the defendants.

The opinion of the court was delivered by

SWAYZE, J.

This is a suit so called for specific performance. The only question is a question of fact as to which we have unfortunately reached a different conclusion from the vice-chancellor.

The contract was made by letter on February 4th, 1920. A foreclosure was then pending to perfect the title. The contract was that Mrs. Patterson should pay $30 a month until the Loizeaux Lumber Company was able to give a free and clear title. She agreed to pay them $3,700 as soon as they were able to do this. Three thousand dollars was to be raised by first mortgage on the property; $700 in cash which she was to raise by second mortgage. Apparently, she expected to raise the $3,000 on first mortgage of some third party, but this proved impracticable and finally the defendants agreed to accept her mortgage for $3,000 in lieu of that much cash. Notice was subsequently given to her that the defendants were ready to close the matter. She was, however, unable to do so and from time to time received an extension, the relations between her and the wife of Mr. Loizeaux being very cordial. The defendants continued urging her to comply with the contract until July, and thereupon there was correspondence, which, we think, clearly amounted to an abandonment of the contract. Meantime she was in possession of the property and was getting behind in her rent. On July 2d she wrote for a further extension of time, enclosing the June rent. On July 9th they wrote her that as no arrangements had been made about the property they were offering it for sale, as she had not completed her arrangements as she had expected, and they inquired when they could get possession. There had been inquiry at her house about the particulars as to its purchase and Mrs. Patterson explained that the purchase could hardly be called a purely business matter; that the purchase price verified that and that the defendants could have gotten a very much larger amount for the property than they were selling it to Mrs. Patterson for; that Mr. Loizeaux had been unusually kind and patient. She added that she was going to get the money of a Mr. Tebbs, and that her husband had called on Mr. Tebbs the

evening before and learned that he would have the necessary amount on Thursday night and that she would immediately call with it, again repeatedly thanking Mr. Loizeaux for his kindly interest. To this the defendants replied that they understood that the necessary amount would be given to Patterson by Tebbs on Thursday evening, and that he would immediately call at the office and that this was satisfactory. On the 15th then there was a definite date fixed for closing the transaction by agreement of both parties. Mrs. Patterson, however, did not comply with the modified contract. What took place we can only surmise from defendants' letter to Mrs. Patterson, stating that as she did not come in the day she was to be in, they offered the house to another party and believed it was sold; they added, "if he takes it we cannot go back on our offer." To this Mrs. Patterson made no objection, but on Friday, July 30th, her husband, as he says, early in the morning, finally secured the necessary cash by borrowing it of the trust company; that he hurried to Mr. Loizeaux's office and tendered him the cash, which Mr. Loizeaux refused to accept. She wrote Saturday morning, July 31st, that her husband called at the office (as we understand the Loizeaux office) Friday afternoon. Mr. Loizeaux denies that he saw Mr. Patterson on that day, and, in view of the discrepancy between the time fixed by Mr. Patterson and the time stated by his wife, we think that Mr. Loizeaux's recollection is more accurate. This is confirmed by another fact; Mr. Loizeaux had offered to return the $100 deposit, although he was under no legal obligation to do so, and in this letter of July 31st she expresses her gratitude for the return of the money, as she said it was quite an item to her and of little account to him. After July 29th the negotiations terminated; he sold the property to another and she brought this suit for specific performance.

Obviously, she cannot perform. She is under obligation to give a mortgage, and this she cannot do without her husband joining. He does not even join in the bill and profess his readiness to execute the mortgage so as to put his wife in a position to comply with the contract if in other respects it were possible.

The learned vice-chancellor thought that this difficulty could be avoided by directing that the property be conveyed to her,

subject to a vendor's lien. He recognizes that no time is specified for the payment of the money, and it by no means clearly appears that the purchaser of the property had notice of her alleged claim. The vice-chancellor's argument to that effect is far from conclusive; it seems much more probable, especially from the letters, that she had notice that there were prospective purchasers and that Loizeaux was trying to sell the property and she expressed no objection to the proposed sale to others. She did not mention her alleged equitable title until after the conveyance was made to the purchaser and she filed this bill.

Under these circumstances, we think that she has no equitable right under the guise of specific performance to the making of an entirely different contract after she had in effect treated her rights as at an end and had led Loizeaux to believe that he might make the conveyance to another customer.

Let the decree be reversed and the bill be dismissed, with costs, in both courts.

*For affirmance*—KALISCH, ACKERSON—2.

*For reversal*—THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, BLACK, KATZENBACH, WHITE, HEPPENHEIMER, WILLIAMS, GARDNER, VAN BUSKIRK—13.