The complainant seeks to foreclose his mortgage which was executed by the defendant corporation on June 11th, 1937. He charges defaults in the payment of municipal taxes. The amended answer and counter-claim of the defendant Joshua A. Davis alleges a waiver of the tax defaults.
On August 30th, 1940, the complainant, Brown, owned and held preferred stock of the defendant corporation, and six of the ten shares of its common stock issued and outstanding. The remaining four shares of the common stock, with 372 1/2 shares of the preferred stock, he held as collateral security for loans made to Chester A. Bolles, the president of the corporation. He, in effect, controlled all of the stock of the corporation issued and outstanding. Furthermore, he was a creditor of the corporation, holding its notes for $22,800; and, at the same time, he was an endorser on its notes aggregating $60,000.
In addition to the above mortgage, he held a chattel mortgage on the corporation's property in New Brunswick, New Jersey.
He was chairman of the corporation's board of directors; but he took no active interest in the business. He engaged Simeon Toby for that purpose since he "wasn't taking an active part in it." (Testimony, page 215.) To qualify Toby as a member of the board, one share of stock was issued to him. Toby was given power to sign checks of the corporation with "some other authority." *Page 347 
On the day last mentioned, the complainant gave the defendant Davis an "option to purchase all of his holdings of preferred and common stock of Royal Battery Corporation * * *, and all claims of every kind and nature against the said corporation * * *." The option provided that "Brown will enter into an agreement with Royal Battery Corporation postponing the amortization payments heretofore or hereafter falling due on the real and chattel mortgages now held by him until January 1st, 1943. Brown covenants and agrees that the amount of principal due on the real and chattel mortgages now held by him is the sum of $21,000. Inall other respects the said real and chattel mortgages willcontinue in effect according to their terms." (Exhibit D-9.) (Italics mine.)
Pursuant to the terms of the option, Davis, on September 12th, 1940, paid Brown $25,000 in cash and gave him two promissory notes of $5,000 each, due, respectively, on March 1st, 1941, and September 1st, 1941. These notes were secured by second real and chattel mortgages on all of the property of the corporation. (Exhibits D-11, D-12 and D-13.) In return for the payments Brown transferred to Davis all of the preferred and common stock held by him in the corporation, and executed and delivered an extension of mortgage agreement to the defendant corporation (Exhibit C-3), whereby the due date of payment of the said real and chattel mortgages was extended to January 1st, 1947. The extension agreement, among other things, provided: "The parties hereto further covenant and agree that the said bond, real estate mortgage and chattel mortgage shall be and hereby are modified so as to postpone accordingly the amortization of the principal sum of $21,000 now due thereon and are in all other respectsratified and confirmed." (Italics mine.) The agreement is the culmination of an oral discussion had between Brown and Davis on or about August 13th, 1940, in Brown's New York apartments. On August 14th, 1940, Davis wrote a letter to Brown in which he recited the matters discussed and requested Brown to verify the accounted recitals. Brown appended his approval to the communication (Exhibit D-8). Throughout these negotiations the taxes on the real *Page 348 
property covered by Brown's mortgage (Exhibit C-2) were due and remained unpaid for the first and second quarters of 1940. They were more than ninety days in arrears.
In this posture of affairs, and after Davis acquired Brown's interest in the corporation, Brown on October 23d 1940, filed his bill of complaint charging default in the payment of the first and second quarters of the 1940 real estate taxes.
In their answers the defendants alleged that the complainant agreed to waive, and had waived, the tax arrears. Davis in his counter-claim asked that the complainant be enjoined from proceeding with his foreclosure; or in the alternative, that he, Davis, be restored to the position occupied by him prior to September 12th, 1940.
The tax arrears and the two promissory notes aforesaid were paid after the filing of the complaint. The payments, of course, have no bearing on the issues. Davis, after suit was instituted, tendered the interest payments due on the bond and mortgage to the complainant (Exhibits C-1 and C-2), which he refused to accept.
The defendants contend that the complainant at the time of the execution of the agreements (Exhibits D-8 and D-9), was aware of the fact that the taxes covering the property in the complainant's mortgage were due and unpaid, and that his conduct in executing the agreements and accepting the consideration therefor from Davis was an implied waiver of the tax defaults. They say that "although the legal title of the real estate was vested de jure in the defendant Royal Battery Corporation, it was in fact, in truth and in equity the absolute property of the complainant * * * because he held all of the stock in the Royal Battery Corporation, was its principal creditor, was Chairman of its Board of Directors (in attendance at all Board meetings), managed its business and controlled the disbursement of its funds through his agent and servant, Simeon Toby." Stockton v.Central Railroad Co., 50 N.J. Eq. 52; 24 Atl. Rep. 964; Breslin
v. Fries-Breslin Co., 70 N.J. Law 274; 58 Atl. Rep. 313; Ross
v. Pennsylvania Railroad Co., 106 N.J. Law 536;148 Atl. Rep. 741; Havey v. Hofmann, 121 N.J. Eq. 523; 191 Atl. Rep. 756;affirmed, 123 N.J. Eq. 589; 199 Atl. Rep. *Page 349 75; Whitfield v. Kern, 122 N.J. Eq. 332; 192 Atl. Rep. 48;Rippel v. Kaplus, 124 N.J. Eq. 303; 1 Atl. Rep. 2d 883.
Brown says that at the time he transferred his interest in the corporation to Davis, he did not know the taxes were in arrears.
Davis maintains that he is not bound by Exhibit C-3, because it is not the memorial of the transaction between him and Brown; that the real memorial of their transaction is the agreement of August 30th, 1940 (Exhibit D-9).
The defendants allege waiver; therefore, the burden is theirs to establish a knowledge by the complainant of the right waived.Thomas v. West Jersey Railroad Co., 24 N.J. Eq. 567;Derechinsky v. Epstein, 98 N.J. Eq. 79; 130 Atl. Rep. 720;affirmed, 99 N.J. Eq. 447; 131 Atl. Rep. 922; K.S.S. Realty Co.,Inc., v. Ostroff, 100 N.J. Eq. 128; 135 Atl. Rep. 869;affirmed, 101 N.J. Eq. 771; 138 Atl. Rep. 921; Marneil RealtyCorp. v. Twin Brook Realty Corp., 119 N.J. Eq. 205;181 Atl. Rep. 882.
In 67 C.J. 309 ¶ 11, it is said:
"In accordance with the general rule, waiver must be proved by the party alleging it by evidence that does not leave the matter doubtful or uncertain * * *. The burden of proving knowledge on the part of the party charged with the waiver is upon the party relying on it."
See, also, Bergman v. Fortescue, 74 N.J. Eq. 266;69 Atl. Rep. 474; Jordan v. Reed, 77 N.J. Law 584; 71 Atl. Rep. 280;Patterson v. J.D. Loizeaux Lumber Co., 92 N.J. Eq. 569;114 Atl. Rep. 336 (reversed under finding of fact in 93 N.J. Eq. 446; 116 Atl. Rep. 697); First National Bank of Morristown v.Turner, 10 N.J. Mis. R. 90; 157 Atl. Rep. 665; 67 C.J. 299 ¶5; 3 Williston on Contracts 2006 ¶ 697. I feel the defendants have not sustained their burden.
The president of the defendant corporation, Bolles, testified that in March or April, 1940, he discussed with Brown the non-payment of taxes. *Page 350 
Simeon Toby, Brown's alleged representative, testified that he and Brown in discussing the corporation's financial condition, never spoke of real estate tax arrears specifically. His testimony indicates that moneys were received by Bolles for the purpose of paying taxes; that Bolles, on April 5th, wanted money for taxes and that $2,000 was mentioned therefor. Toby did not know whether that sum was required for real estate taxes or not. (Testimony, page 75.) Bolles at that time was collecting from Brown the total sum of $52,000, a portion of which, it appears, was needed for taxes.
Davis, in effect, testified that he met Brown on August 13th, 1940, in an apartment on Park Avenue, New York City (testimony, page 78); that Brown spoke of the condition of the corporation; that they had a temporary balance sheet of the corporation's affairs as of May 31st, 1940 (Exhibit D-2), (testimony, page 90); that he, Davis, knew that taxes for the first and second quarters of 1940 were not paid, as shown by the balance sheet (Exhibit D-2), (testimony, page 90); that taxes were spoken of in a general way at that conference; that Brown told him they had not been able to pay taxes (testimony, page 91); that he, Davis, met Brown again on September 12th, 1940, at Mr. Watson's office at the closing of the agreement (Exhibit D-9); that after the closing they all went to the bank downstairs where, after the money had been paid, Brown said, "now you fellows must take care of these taxes;" and that he, Davis, assured him that they would (testimony, page 88).
In the instant case I find no waiver of tax arrears, either actual or implied; the record is barren of any statements or representations to that effect. On the contrary, the written exhibits C-3, D-8 and D-9, show that the signatories to those instruments contemplated no change or modification in the bond and mortgage clauses relating to the payment of municipal taxes.Martin v. Melville, 11 N.J. Eq. 222; DeGroot v. McCotter,19 N.J. Eq. 531; Wilson v. Bird, 28 N.J. Eq. 352; Bell v.Romaine, 30 N.J. Eq. 24; Van Syckel v. O'Hearn, 50 N.J. Eq. 173; 24 Atl. Rep. 1024; Derechinsky v. Epstein, supra; Freund
v. Weisman (Court of Errors and Appeals), 101 N.J. Eq. 245;137 Atl. Rep. 885; Lettieri *Page 351 
v. Mistretta, 102 N.J. Eq. 1; 139 Atl. Rep. 514; Engler v.Buesser, 106 N.J. Eq. 173; 150 Atl. Rep. 576.
In nearly all cases in which it has been held that the mortgagee has waived a default in the payment of taxes or interest, the court has found that the mortgagee has either expressly consented to the default or made an express representation that he waived it.
Each and every condition or covenant in a mortgage is deemed to be separate and distinct; and the modification of one of them does not necessarily affect the others. Union Trust Company ofNew Jersey v. New Jersey Water and Light Co., 94 N.J. Eq. 446;120 Atl. Rep. 329; affirming on this point, 93 N.J. Eq. 562;117 Atl. Rep. 155; Freund v. Weisman, supra; South Camden TrustCo. v. Stiefel, 144 Atl. Rep. 798; Gemmer v. Ritz RealtyCorp., 114 N.J. Eq. 84; 168 Atl. Rep. 316.
The parties stipulated that the bond (Exhibit C-1) and mortgage (Exhibit C-2) was modified by postponing the amortization of the principal sum of $21,000, but "in all other respects, the said real and chattel mortgages will continue in effect according to their terms." (Exhibits D-8, D-9, C-3.) This quoted language leaves no doubt as to the intentions of the parties; it does not disturb the tax clause; it really reaffirms the continued existence of it.
An agreement to extend the time for payment of the principal sum secured by a mortgage does not waive or abrogate a stipulation in the mortgage giving the mortgagee the right to declare the whole indebtedness due on default in the payment of interest, or of an installment of the debt, or of taxes on the property, unless so expressed. 41 C.J. 855 ¶ 1043; see, also,41 C.J. 861 ¶ 1054.
Since it is apparent that there was no waiver of the tax defaults, it was not necessary then for the complainant to demand payment of the taxes before instituting suit as the defendants assert.
Ordinarily, it is not necessary that a mortgagee demand that a mortgagor perform a defaulted mortgage covenant or condition before instituting suit to foreclose because of the default.Security Trust and Safe Deposit Co. v. New Jersey *Page 352 Paper Board, c., Manufacturing Co., 57 N.J. Eq. 603;42 Atl. Rep. 746; Lettieri v. Mistretta, supra; 41 C.J. 877 ¶ 1085.
A demand, before institution of suit to foreclose for failure to perform a condition or covenant of the mortgage, is necessary only where the mortgagee had previously waived the performance of the condition or covenant. Lettieri v. Mistretta, supra.
In 41 C.J. 877 ¶ 1085, it is said:
"In general * * * no demand for payment or for performance of a condition is required before proceeding to foreclose, unless demand is expressly required by the stipulation of the parties * * * or as a matter of fair dealing under peculiar circumstances * * *."
In view of the testimony submitted in the defendants' behalf that they knew the municipal taxes had been in arrears for more than ninety days before the signing and execution of the papers modifying certain terms of the bond and mortgage, is it not pertinent to observe that they, the defendants, were somewhat remiss in their activities in not safeguarding or securing themselves by having incorporated in the papers a provision expressly waiving the tax defaults? Had they done so, this suit would not be here now. Equity still rewards the vigilant and not him who sleeps. The parties hereto, throughout the period of the negotiations, and at the consummation thereof, were represented by eminent and experienced counsel. This court will not assume that such counsel in the drafting and phrasing of the agreements, did not say what they meant, or that they did not mean what they said. The evidence does not warrant such judicial attitude.
While I sympathize with the defendants' plight and feel that the complainant could have dealt more leniently with them, yet I cannot ignore his rights since he undertakes legally to enforce them.
Under all the circumstances, the complainant is entitled to a decree. *Page 353